UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZAFAR SHEIKH, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 5037 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JOHN WHEELER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zafar Sheikh was involved in an Indiana state court foreclosure action and brought this federal suit against his state court adversaries and others connected to the events underlying the foreclosure. Doc. 1. After Defendants moved to dismiss the original complaint, Docs. 11, 31, Sheikh filed an amended complaint, Docs. 47, 52, with the court's retroactive permission, Doc. 51. Defendants now move under Civil Rules 12(b)(1) and 12(b)(6) to dismiss the amended complaint. Docs. 55, 57. Their Rule 12(b)(6) motions are granted.

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Sheikh's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The court recites the facts as favorably to Sheikh as those materials allow.

1

*See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017).  In setting forth the facts at this stage, the court does not "vouch for their accuracy."  *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 291 (7th Cir. 2018).

Sheikh financed the 2015 purchase of an Indiana supermarket with a loan from Countryside Bank secured by a mortgage on the property.  Doc. 52 at ¶¶ 14, 18-19, 33.  Before approving the loan, John Wheeler, Countryside's president, and Raj Badri, Countryside's contract officer, instructed Sheikh to find borrowers with higher credit scores.  *Id*. at ¶¶ 3-4, 19-20.  Sheikh and his business partner recruited their relatives, Sean Sheikh ("Sean") and Bushra Naseer, to serve as guarantors of the loan and parties to the contract of sale.  *Id*. at ¶¶ 20-22; Doc. 53-3 at 47-53.  Although they were members of 3232 Central Avenue LLC—a borrower on the note and owner of the supermarket—Sean and Naseer were not actively involved in running the supermarket or negotiating with Countryside.  Doc. 52 at ¶¶ 20, 26; Doc. 53-3 at 15, 19.  Wheeler and Badri initially assured Sheikh on Countryside's behalf that Sheikh could change the parties on the loan after ninety days, but later announced that transferring the loan would cost $190,000.  Doc. 52 at ¶¶ 32-33.

As part of the loan process, Countryside hired Cary A. Lannin from Appraisal Research Counselors to value the supermarket, and his appraisal exaggerated the property's value.  *Id*. at ¶¶ 28-29; *id*. at pp. 38-39.  Countryside provided this overvaluation to the Small Business Administration ("SBA") and the Federal Deposit Insurance Corporation ("FDIC").  *Id*. at ¶¶ 28, 32-34; *id*. at pp. 30, 46.  In early 2017, after the supermarket experienced problems with its roofing and refrigerating systems, *id*. at ¶ 39, Lannin conducted a second appraisal that valued the property at about half of his first appraisal, Doc. 63 at 42.

As problems with the supermarket mounted, Badri and Wheeler encouraged Sheikh and his partner to sell or lease the business in order to keep the loan current. Doc. 52 at ¶¶ 42-44. Sheikh then arranged to lease the supermarket to Hasan Museleh and Nidal Museleh. *Id*. at ¶ 46. Jeffery Nitti, an employee at Windsor Advantage, which Countryside hired to help service the loan, was involved with Countryside's approval of the lease. *Id*. at ¶¶ 6-7, 50-52, 54. Nitti eventually informed Sheikh and the Muselehs that Countryside would not approve the lease and instead had decided to foreclose on the mortgage. *Id*. at ¶ 56.

Countryside hired Burke, Costanza & Carberry LLP for the foreclosure action; Nancy Townsend, a lawyer at the firm, handled the case. *Id*. at ¶ 59; Doc. 63 at 50-63. The foreclosure complaint contained unsupported claims of theft and fraud, and Townsend and Nitti sent Sheikh multiple demands. Doc. 52 at ¶¶ 60-61. A judgment in the foreclosure action was entered against Sheikh, Doc. 53-1, but that judgment was vacated and the claims against him were voluntarily dismissed, Doc. 53-2 at ¶¶ 2-4. A remaining defendant (Sean) then removed the foreclosure action to the Northern District of Indiana, where it remains pending. *See Countryside Bank v. Sheikh*, 2019 WL 442376 (N.D. Ind. Feb. 5, 2019) (denying Countryside's motion to remand). In the meantime, 3232 Central Avenue LLC filed for Chapter 11 bankruptcy in the Northern District of Indiana. Doc. 63 at 9. That bankruptcy petition was dismissed last month. *In re 3232 Central Avenue, LLC*, Case No. 2:18-nk-22070, Doc. 140 (Bankr. N.D. Ind. Feb. 20, 2019).

<u>*Rooker-Feldman* Doctrine</u>: One of the present motions to dismiss argues that the *Rooker-Feldman* doctrine deprives the court of jurisdiction over this case. Doc. 53 at 2-4. That argument is incorrect. *Rooker-Feldman* applies only where "the federal plaintiff seeks the alteration of a state court's judgment." *Michtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018).

3

Because Sheikh is not asking this court to "alter or annul any decision by a state judge," *ibid.*—indeed, the state court judgment against him has been vacated, Doc. 53-2 at ¶¶ 2-4—the court has jurisdiction over his claims and proceeds to the grounds offered for dismissal under Rule 12(b)(6).

18 U.S.C. § 1962(c) Claims (Counts I-V). "Section 1962(c) makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering liability.'" *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (quoting 18 U.S.C. § 1962(c)). A § 1962(c) claim has "four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bible v. United Student Aid Funds*, 799 F.3d 633, 655 (7th Cir. 2015). Because his § 1962(c) claims are based on acts of wire fraud under 18 U.S.C. § 1343, Doc. 52 at pp. 28-29, Sheikh must "meet the heightened pleading requirements of Rule 9(b)." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 589 (7th Cir. 2017). "Rule 9(b) requires the complaint to 'state with particularity the circumstances constituting fraud.'" *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting Fed. R. Civ. P. 9(b)). "That means that it must specifically allege the who, what, when, where, and how of the fraud." *Ibid.* (internal quotation marks omitted). The complaint fails to adequately allege an enterprise or a pattern of racketeering activity, requiring dismissal of the § 1962(c) claims.

To plead an "enterprise" under § 1962(c), a plaintiff must allege a distinct "association-in-fact" that has "a purpose, relationships among those associated with the enterprise, and longevity to permit those associates to pursue the enterprise's purposes." *Bible*, 799 F.3d at 655

(internal quotation marks omitted); *see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732-33 (7th Cir. 1998) (holding that pleading a "viable RICO conspiracy claim" requires more than "conclusory and vague allegations concerning the collective conduct of the 'defendants'"). Sheikh's claims founder because they allege only that Defendants had "a commercial relationship, not that they had joined together to create a distinct entity" for improper purposes. *United Food*, 719 F.3d at 855; *see also Bible*, 799 F.3d at 655-56 (explaining that the statutory definition of "enterprise," 18 U.S.C. § 1961(4), does not cover "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest").

Rather than setting forth specific facts that plausibly support the existence of an enterprise, Sheikh alleges that various Defendants provided services at mostly uncertain times and places in connection with a single loan. Doc. 52 at pp. 29-30 (alleged Predicate Acts 1-4 involve only Countryside employees who originated and serviced the loan), 32 (alleging that Nitti and Townsend acted on behalf of Countryside, without providing the details of the relationship), 38-39 (alleging that Wheeler and Badri "enlisted Lannin to" conduct an appraisal, without providing the details of the relationship), 40-42 (alleging that Townsend, Lannin, and Nitti were employed by Burke, Contanza & Carberry LLP, Appraisal Research Counselors, and Windsor Advantage, respectively, without alleging how those entity defendants participated in the enterprise). Accordingly, because Sheikh has alleged no more than a series of normal commercial relationships in one complex transaction, he has not stated a RICO claim. *See United Food*, 719 F.3d at 855 ("Although the … allegations do not entirely rule out the inference that [the defendants] were acting in concert on behalf of a shadow enterprise while maintaining the outward appearance of a normal commercial relationship, there is ultimately not enough in

5

this complaint to elevate that inference from a sheer possibility to something that is plausible on its face.") (internal quotation marks omitted); *see also Antonacci v. City of Chicago*, 640 F. App'x 553, 557 (7th Cir. 2016) ("[E]ven though his RICO allegations describe specific actions undertaken by specific defendants on certain dates, it takes more than that to allege a plausible conspiracy. The allegations fall far short of meeting the stringent pleading requirements of a civil RICO claim … .").

Even if Sheikh succeeded in alleging the existence of a distinct enterprise, he fails to adequately allege under § 1962(c) a "pattern of racketeering activity" that "carries with it an implicit threat of continued criminal activity in the future or … by its nature projects into the future with a threat of repetition." *Bible*, 799 F.3d at 659-60 (internal quotation marks and citation omitted). The complaint "presents a distinct and non-recurring scheme" that involves a single loan and foreclosure, which is insufficient to state a § 1962(c) claim. *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006) ("[T]he complaint does not sufficiently allege continuity for § 1962(c) purposes even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim.") (collecting cases). And although Sheikh's response brief lists three other loans that Countrywide allegedly approved where the borrower was not the same person as the owner, Doc. 63 at 21, he never states how those loans involved the same alleged enterprise as his loan. *See Drobny v. JPMorgan Chase Bank, NA*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) ("While Plaintiffs make conclusory references to 'thousands of foreclosures,' the only scheme that is set forth in any detail in the complaint is [the defendant's] allegedly improper attempt to foreclose on Plaintiffs' own mortgage. This purported scheme does not rise to … 'a pattern of racketeering activity' because Plaintiffs are the sole victims.") (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598-99 (7th Cir. 2001)).

42 U.S.C. § 1985 Claims (Counts VI-VII). Under § 1985(2), "[a] plaintiff must allege class-based animus to state a claim for denial of access to state courts." *Kowalski v. Boliker*, 893 F.3d 987, 1001 (7th Cir. 2018) (internal quotation marks omitted). Under § 1985(3), a plaintiff likewise must allege "a predicate race-based or class-based equal-protection violation." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 633 (7th Cir. 2018). Here, after numerous allegations setting forth a multiyear loan scheme, Sheikh inserts a conclusory allegation that Defendants had "animus" against "minorities." Doc. 52 at p. 42; Doc. 63 at 40. A "conclusory" pleading, untethered to any specific factual allegations, that "any difference in treatment must be the result" of discrimination is insufficient to state a plausible claim. *Onyango v. Nick & Howard, LLC*, 607 F. App'x 552, 555 (7th Cir. 2015); *see also McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) ("[T]he complaint must allege enough factual content to support an inference that the retention program *itself* was adopted *because of* its adverse effects on black brokers.").

False Claims Act Claim (Count IX). As a *pro se* plaintiff, Sheikh cannot bring a False Claims Act suit claiming that the Government was defrauded. *See Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2014) (holding that a relator suing under the False Claims Act must be either "licensed as a lawyer or represented by a lawyer"). Sheikh's response—that he himself was also harmed by Defendants' fraud—does not defeat the proposition that the Government is the true party in interest in a False Claims Act claim. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93-94 (2d Cir. 2008) ("While relators indisputably have a stake in the outcome of False Claims Act *qui tam* cases that they initiate, the Government remains the real party in interest in any such action. … Because relators lack a personal interest in False Claims Act *qui tam* actions, we conclude that they are not entitled to proceed *pro se*.")

(internal quotation marks omitted) (collecting cases).  Sheikh's complaint alleges that the defendants defrauded the FDIC and SBA.  Doc. 52 at pp. 46-47.  Such claims may be brought only in the name of the Government, *see* 31 U.S.C. § 3730(b)(1), the real party in interest under the False Claims Act.  *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852-53 (7th Cir. 2009) (distinguishing between private suits under 31 U.S.C. § 3730(h) and *qui tam* suits under 31 U.S.C. § 3730(b)).

Although dismissals of False Claims Act claims "for lack of proper representation" are "normally without prejudice," a claim may be dismissed with prejudice where the plaintiff "cannot represent the party in interest (the United States) without obtaining a lawyer to conduct the litigation," the plaintiff has not linked the "alleged fraud" to claims that the defendant made upon the Government, and the suit appears intended to harass the defendant.  *Georgakis*, 722 F.3d at 1078.  Here, Sheikh cannot represent the United States and, moreover, has apparently not attempted to follow the procedures that 31 U.S.C. § 3730(b) mandates for False Claims Act complaints.  Additionally, despite having been given the opportunity to replead, Sheikh has not alleged fraud on the SBA or the FDIC with the particularity required under Rule 9(b), *see United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 841 (7th Cir. 2018) ("[T]he relator must … describe the predicate acts with some specificity to inject precision and some measure of substantiation into his allegations of fraud.") (internal quotation marks omitted), or adequately connected such fraud with monetary claims that Countryside submitted to the SBA or FDIC, Doc. 52 at 46-47 (alleging that Countryside provided false statements in quarterly reports to the FDIC, without indicating what payments resulted therefrom); Doc. 63 at 33 (asserting that Countryside at unspecified times failed to inform the SBA of pending litigation and told the SBA it did "not want to become a landlord," without indicating how these representations led to false

8

claims against either agency).  Moreover, that Sheikh filed this insufficiently supported False Claims Act claim alongside fourteen other claims even as foreclosure and bankruptcy proceedings remained pending in the Northern District of Indiana strongly indicates an "inten[t] to harass the defendants."  *Georgakis*, 722 F.3d at 1078.  Dismissal with prejudice is therefore warranted.

For the foregoing reasons, Sheikh's federal claims are dismissed.  The dismissal is with prejudice, as Sheikh has already been given a chance to replead.  *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem … .").  Given the dismissal of the federal claims at this early stage of the litigation, and because there is no diversity jurisdiction over the state law claims (Counts VIII, X-XV), Doc. 52 at ¶¶ 2-4 (alleging that both Sheikh and Defendants Wheeler and Badri are Illinois citizens), the court relinquishes its supplemental jurisdiction over the state law claims.  *See Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) ("The usual practice in this circuit is for district courts to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.") (internal quotation marks omitted).

March 6, 2019

_____
United States District Judge